ELLIS, Judge.
This suit is by three policemen and a laborer formerly employed by the City of Thibodaux. Made defendants are the city and the individual members of its Board of Trustees. The individual defendants are: Leonard J. Toups, Trustee of *162 Public Safety and Ex-Officio Mayor; Bertrand Hebert, Trastee of Public Property; and Kenneth Hoffman, Trustee of Finance. While the defendant City and the other individaul defendants resist the plaintiffs’ demands and are appellees before this court, Mayor-Trustee Toups has by answer and argument joined in the prayer of the plaintiffs that their continued status as city employees be recognized, and in appealing from judgment dismissing this suit.
The demand of the suit is (a) to have declared null a resolution and ordinance adopted by the City’s Board of Trustees which had the effect of terminating the plaintiffs’ employment, and (b) to enjoin the defendants from preventing the plaintiffs from performing their regular duties as municipal employees.
This appeal is from judgment dismissing plaintiffs’ suit.
The oral argument and the record indicate that in December 1958 the Trustee-Mayor was re-elected on one ticket, while the other two defendants Trustees were re-elected on an opposing ticket. The Mayor appointed the four plaintiffs as city employees in December 1958 and January 1959. A majority of the Board of Trustees (i. e., the other two defendants Trustees) took action which had the effect of terminating plaintiffs’ employment on January 7, 1959.
The litigation revolves about the interpretation of certain provisions of the charter of the City of Thibodaux relative to the appointment and discharge of city employees. The present form of government of the City of Thibodaux is provided by special statute, Act 266 of 1918, as amended by Acts 84 of 1942, 300’ of 1948, and 670 of 1954. (It is conceded that none of the amendments altered the provisions or wording of the charter in any respect material or pertinent to the present controversy.)
The plaintiffs, joiiied by the defendant mayor, argue that the exclusive power of hire and fire individual employees is vested in the Trustee-Mayor (with certain limited exceptions and restrictions). The appellees contend to the contrary that the appointive and dismissal powers of the Mayor are subordinate to the authority vested by the city charter in the Board of Trustees as an entity.
The City charter provides for a commission plan of government consisting of a Board of Trustees of three members, “each of whom shall have charge of and administer the department as indicated by his title”; the Trustee of Public Safety and Ex-officio Mayor; the Trustee of Finance; and the Trustee of Public Property. (Section 3, Charter.) Despite some argument to the contrary, it is plain both from a reading of the charter as a whole and from specific individual provisions thereof that each of the trustees exercises both executive and legislative functions as shown by Section 10 which states that “the Board of Trustees * * * shall be vested with the legislative powers of the town provided for herein”, and Section 13 which provides that “the executive and administrative power, authority and duties of the Town shall be distributed among the three departments as follows: First, Public Safety; second, Finance; and third, Public Property” (each of which departments is administered by its elected trustee, see Section 3.)
The interpretation of charter sections 14(f), 21, and 25, is at issue. The text of these provisions is as follows (italics ours):
Section 14(f) provides in part:
“He (the Mayor) shall have the authority to employ all such persons as he may deem proper for the efficient and orderly administration of the affairs of the city except as otherwise provided in this charter; to fix their compensation and to discharge at will, except the Chief of Police and Clerk, whose election is otherwise provided for therein * *
*163 Section 21 provides:
“Be it further enacted, etc., That the officers elected by the people shall be the only officers of the town. All other persons in the service of the town of any commissioner or board thereof except the Board of Trustees are hereby declared to be the employees and subject to removal at any time at the pleasure of, and without cause, by the Board of Trustees or Mayor as provided in this charter.”
Section 25 pertinently provides:
“Be it further enacted, etc., That the Board of Trustees shall have power to authorize, by ordinance, the appointment of such salaried employees as may be necessary and determine the number that shall be employed in any department and to fix their compensation * *
In the resolution of any seeming conflict between these cited sections, all parties agree that the paramount aim is to arrive at the legislative intent as expressed by the charter; and that, to do so, the charter should he read as a whole and should if possible be construed so as to reconcile any apparently conflicting provisions (State v. St. Julian, 221 La. 1018, 61 So.2d 464) and so as to avoid a construction under which any provision would be meaningless. Roberts v. City of Baton Rouge, 236 La. 521, 108 So.2d 111. But in applying these identical principles to the construction of the Thibodaux city charter, the appellants and the appellees arrive (as might be expected) at opposite results.
With regard to the meaning of the three disputed charter sections above-quoted, the appellees contend that the ultimate power to appoint, discharge, and fix the compensation of city employees is vested in the Board of Trustees as an entity by Sections 21 and 25; and that the power of the Mayor under Section 14(f) in this regard is specifically subjected to this ultimate power of the Board by the proviso therein that he may hire employees “except as otherwise provided in this charter”. The purpose thus of Section 14(f), according to appellees, is to permit the Mayor in the absence of contrary action by the Board, or when the Board is unable to act, to hire employees as needed or to fire them when necessary, to permit the Mayor, for instance, to fire a drunken garbage truck driver and to hire a replacement immediately, without the necessity of calling a formal meeting of the Board of Trustees in advance of such action on his part.
The appellants, however, urge that under the plain language of subsection 14(f) the Mayor has the exclusive power to hire and fire city employees. The subsection’s proviso “except as otherwise provided in this charter” is interpreted to refer to the charter provisions that the chief of police, city clerk, city attorney, and city assessor were to be selected by the Board of Trustees (sections 5, 22, 26) and to the provision of Section 25 that the Board of Trustees could determine the number and the pay of salaried positions of city employment: so that, according to appellants, exept for the four named officers, the mayor has the exclusive power to hire and to fire the individual employees in all departments, subject only to the restriction that the Board as an entity may create the salaried positions to be filled, fix the number in each department, and provide what compensation shall be paid each position so created. Likewise, under Section 21 the power to discharge is granted to the Mayor or Board, according to appellants, as determined by whether it is a position within the absolute discretion of the mayor to fill under the specific charter provisions or one of the four positions which the charter preserves for the Board’s appointment.
Appellee contends that when the charter is construed or interpreted it clearly gives the Board of Trustees the power to authorize, by ordinance, the appointment, by the Mayor, by the Department Head, or otherwise, including the appointment of individually named employees by the Board *164 itself, of such salaried employees as may be necessary.
The appellants agree that the charter must be interpreted or construed as a whole, but when done, the mayor under Section 14(f) is given the authority to employ all such persons he may deem proper for the efficient and orderly administration of the affairs of the town; to fix th|$r compensation and discharge them at will, except .the Chief of Police and Clerk, the City Attorney and the Assessor, and “except as otherwise provided in this charter”, and except as to any limitation or other provision in the charter affecting Section 14(f), namely, Section 25, which empowers the Board of Trustees “to authorize, by ordinance, the appointment (by the Mayor) of such salaried employee as may be necessary and determine the number that shall be employed in any department and to fix their compensation.”
Each of these opposing constructions produces results which may bring about practical difficulties in the administration of the city’s affairs; Under the appellant’s interpretation the Mayor has the exclusive power to hire and to fire the employees not only of the department he himself administers, but also of the other two departments whose trustees were elected to administer them and to supervise and direct the employees thereof; while under the appellee’s construction, a majority of the Board of Trustees may likewise supersede in the selection and discharge of all employees including the Mayor’s department which he was elected to administer. It is not, however, the function of this court to choose the interpretation that seems wiser to us or to write a new charter; but simply to construe the charter as written in accordance with the legislative intention as expressed by the provisions thereof.
Under what we believe to be a reasonable and logical interpretation of the provisions of the charter as a whole we do not find any conflict, but if there be, it is only in one respect of minor importance. This will be brought to light and discussed hereafter. Appellees contention in this case rests heavily upon Section 2 and 3 of the charter. The former contains an enumeration of the powers and duties of the City of Thibodaux as a corporate body, among which appellees point out that it “may create, establish, abolish or organize offices and fix the salaries and compensation of all officers and employees; may make and enforce local police, sanitary and other regulations; and may pass such ordinances as may be expedient for maintaining and promoting the peace, good government and welfare of the Town and for the performance of the functions thereof.” Appellees then contend that under Section 3 of the charter the learned trial judge in his writ-en reasons for judgment, after a detailed analysis of the entire charter, correctly cited as the express declaration of Section 3 of the charter that “the Board of Trustees of the Town of Thibodaux * * * shall possess and exercise the powers herein granted to the Town of Thibodaux” and concluded: “That broad authority is without qualification or limitation and extends to the utmost limits of the power and authority granted to the City of Thibodaux as a corporate body. On the other hand, our study has disclosed that the authority granted to each of the three trustees is either express or implied, and that the result of such limitation is that the authority of the board of trustees necessarily takes precedence over the authority of the individual members thereof.” We believe that this interpretation and the conclusion based thereon is erroneous. Section 3 of the charter reads as follows:
“Form of Government”
“Section 3. Be it further enacted, etc., That the form of government of the said Town shall be known as the Commission Plan and shall consist of a Board of three citizens, who shall be elected by the qualified electors of the Town. One of whom shall be known and styled the Trustee of Public Safety, and ex-officio Mayor; one the Trustee of Finance, who shall be *165 ex-officio the Treasurer and Tax Collector; and one the Trustee of Public Property, each of whom shall have charge of and administer the department as indicated by his title, to be known and officially styled the Board of Trustees of the Town of Thibodaux; possessing the qualifications and elected for the terms and in the manner herein provided and as such shall possess and exercise the powers herein granted to the Town of Thibodaux, and to that end may pass such ordinances, resolutions or regulations as may be necessary and proper, and enforce the same by a fine of not more than one hundred dollars ($100) or imprisonment not exceeding thirty days or both.”
Section 3, therefore, simply and plainly, designates the form of government as the Commission plan which shall consist of a board of three citizens who shall be elected by the qualified electors of the town and then set forth their titles as the “Trustee of Public Safety, and ex-officio Mayor; one the Trustee of Finance, who shall be ex-officio the Treasurer and Tax Collector; and one the Trustee of Public Property,” who were to be known and officially styled the Board of Trustees of the Town of Thibodaux. Then, referring to the individual office holders, viz., the Mayor, Trustee of Public Property and Trustee of Finance, the Section provides that they shall possess the qualifications and be elected for' the terms and in the manner provided in the Charter and “as such shall possess and exercise the powers herein granted to the Town of Thibodaux * * ”. Under this wording the right to possess and exercise the powers granted to the town of Thibodaux is placed in the officers designated as the Mayor, Trustee of Finance, and Trustee of Public Property individually and as the Board of Trustees of the Town of Thibodaux. This interpretation, we believe, is consistent with other provisions of the charter which give specific powers to and impose other powers upon the officials, individually in their elected capacity and with those provisions of the charter which impose certain duties and obligations and grant certain powers to these individuals as the Board of Trustees. For example, the City of Thibodaux is empowered under Section 2 to create, establish, abolish, organize as offices, and fix the salaries and compensation of all officers and employees. Under Section 25 the Board of Trustees is empowered to authorize the appointment of all salaried employees as may be necessary and determine the number that shall be employed in any department and fix their compensation. This provision would be useless surplusage if, as contended, Section 3 specifically placed this power solely in the Board of Trustees.
Great stress is placed upon Sections 21 and 25 as sustaining the position or contention of the appellees. The latter argue that Section 21 and Section 25 provide for the right to “hire and fire” by the Board of Trustees, and since there are no other sections with this particular provision it must be assumed that these are the exceptions to the authority of the Mayor to hire and fire as set out in 14(f). They further argue that “we have a situation where the powers of the Mayor to ‘hire and fire’ prescribed by Section 14(f) is limited and qualified by the provision ‘except as otherwise provided in this charter,’ and in Section 21 his power to ‘fire’ is limited by the term ‘as provided in this charter.’ That Section 25 does not consider the mayor individually at all.” They continue their argument with the proposition that the meaning of the last phrase in Section 21, to-wit: “ * * * or Mayor as provided in this charter” refers only to the Mayor and not to the Board of Trustees, under the doctrine of the “last antecedent” and cite the case of Buras v. Fidelity & Deposit Co. of Maryland, 197 La. 378, 1 So.2d 552, 554, as authority for such a conclusion. We cannot agree with the argument of appelleees in this respect but do agree that the Buras case, supra, is applicable but sustains our manner of interpretation of the phrase “as provided in this *166 charter,” as being applicable to the Board of Trustees or the Mayor.
In the Buras case the Supreme Court of Louisiana through Chief Justice Fournet stated:
“ ‘The universal and most effectual way of discovering the true meaning of a law, when its expressions are dubious, is by considering the reason and spirit of it, or the cause which induced the Legislature to enact it.’ Article 18, Revised Civil Code. ‘Punctuation * * * cannot control its (a statute’s) construction against the manifest intent of the legislature, and the court will punctuate or disregard punctuation * * * to ascertain and give effect to the real intent * * * ’ (59 Corpus Juris 989, Section 590. Brackets ours), and the doctrine of the ‘last antecedent’ that ‘relative and qualifying words, phrases, and clauses are to be applied to the words or phrases immediately preceding, and are not to be construed as extending to or including others more remote’ is ‘merely an aid to construction and will not be adhered to where extension to a more remote antecedent is clearly required by consideration of the entire act.' 59 Corpus Juris 985, Section 583. See, also, State ex rel. Wynne v. Lee, 106 La. 400, 31 So. 14; Succession of Baker, 129 La. 74, 55 So. 714, Ann.Cas.1912D, 1181; Thibaut v. Board of Commissioners of Lafourche Basin Levee District, 153 La. 501, 96 So. 47; Dawson v. Ohio Oil Co., 153 La. 657, 96 So. 508; Bank of Houma v. Shaffer, 156 La. 1022, 101 So. 403; Saint v. Allen, 169 La. 1046, 126 So. 548; City of Shreveport v. Gregory, 186 La. 407, 172 So. 435; Ford v. Delta & Pine Land Co., 164 U.S. 662, 17 S.Ct. 230, 31 L.Ed. 590; and 36 Cyc. 1117.” (Emphasis added.)
A mere reading of Section 21 will show that its main purpose is to distinguish between the officers elected by the people as officers of the town and all other persons in the service of the town, or any commission or board except the Board of Trustees are to be considered as employees and subject to removal at any time at the pleasure of, and without cause, “by the Board of Trustees or Mayor as provided in this charter.” This section neither adds to nor subtracts from any right granted the Board of Trustees or the Mayor to hire or fire employees. This section specifically recognizes that the removal of those declared to be employees at any time shall be by the authority designated in other sections of the charter, viz., by the Mayor under 14(f) and by the Board of Trustees as to the City Attorney which they are empowered to appoint under Section 22 or by the Board of Trustees as to the Assessor whom they are empowered to appoint under Section 26(a) or the right of the Board of Trustees to render final judgment of dismissal as to the Chief of Police and Clerk under 14(f). In other words, Section 21 does not give the Board of Trustees or the Mayor the right to remove anyone other than under such authority as is vested in either under other provisions or sections in the charter.
As to Section 25, we believe that it means just what it states in simple language, that the Board of Trustees are granted the power to authorize by passing an ordinance for the appointment by the Mayor of such salaried employees .as the Board may deem necessary, and that the Board is given the right to determine the number that shall be employed in any department and is further given to right to fix their compensation. There is no reason to change the wording of this section so as to interpret it as granting the power to the Board of Trustees to make the appointments of named individuals. It will only make a direct conflict between Section 25 and 14(f) which does not exist under our interpretation.
It can be argued and is, that there is a conflict between the Section 14(f) and Section 25, which, if true, in our opinion is of *167 a minor importance. This conflict would be as to fixing the compensation of the employee authorized to be appointed by the Mayor under Section 25, which specifically states that the Board of Trustees shall fix their compensation, whereas Section 14(f) it is contended grants the authority to the mayor to fix the compensation as well as to discharge at will all persons employed by him. However, we interpret 14(f) as giving this right to the Mayor to fix the compensation of such employees “except as otherwise provided in this charter”. In other words, we believe that the last quoted phrase modifies or limits the authority of me mayor to employ, to fix compensation, and to discharge at will. Under such an interpretation, there would be no conflict for Section 25 would govern as to the fixing of the compensation of employees referred to under that section for this authority is specifically given to the Board of Trustees thereunder.
For the reasons stated we are of the opinion that there is no conflict between the provisions of Section 2, 3, 14(f), 21 and 25, and that under the reasonable and logical interpretation the mayor is given the sole power to appoint all salaried employees which the Board of Trustees shall deem necessary under the provisions of Section 25 and the authority to employ any oiher persons not salaried employees he may deem proper for the efficient and orderly administration of the affairs of the town, under 14(f) and is also granted the power to discharge at will all employees defined as such under Section 21 under the provisions of 14(f), except the City Attorney, Chief of Police, Clerk and the Town Assessor.
For the above and foregoing reasons the judgment of the District Court is hereby reversed, annulled and set aside and it is now ordered, adjudged and decreed that there be judgment in favor of Whitney Joseph Gros, Noble Adolph Roundtree, William Wayne Rothman and Louis S. Oncale, and against the City of Thibodaux, Leonard J. Toups, Trustee of Public Safety, Bertrand Hebert, Trustee of Public Property, and Kenneth Hoffman, Trustee of Finance, decreeing null, void and of no force and effect ordinance No. 551, dated December 20, 1958, adopted by the Board of Trustees of the City of Thibodaux, and the resolution dated January 6, 1959, adopted by the Board of Trustees of the City of Thibo-daux.
It is further ordered, adjudged and decreed that the defendants and each of them be enjoined from in any way interfering with or preventing the hereinabove named plaintiffs from performing their respective duties as police officers and laborer for the City of Thibodaux, and from interfering with the plaintiffs’ receipt of compensation for the services rendered in their respective positions as fixed prior to the adoption of ordinance No. 551 of December 20th, 1958.
It is further ordered, adjudged and decreed that the defendant pay all costs.